## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| John "Jay" Brummett, | § | |
| | § | |
| *Plaintiff,* | § | CIVIL ACTION NO. 3:21-cv-960 |
| | § | |
| v. | § | |
| | § | |
| DataBank Holdings, Ltd. | § | |
| | § | **JURY DEMANDED** |
| *Defendant.* | § | |
| | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Jay Brummett files this Original Complaint against Defendant DataBank Holdings, Ltd., ("Defendant" or "DataBank"), in its assumed or common name, and in support states as follows:

## SUMMARY OF CLAIMS:

1. <u>FMLA – Interference:</u>  Mr. Brummett requested several days off of work.  He did not ask for FMLA leave, but DataBank chose to treat the absence as an FMLA leave.  It then refused to restore Mr. Brummett to an equivalent position when he was ready to return to work.

2. <u>Retaliation for Opposing Unlawful Practices under the FMLA:</u>  DataBank gave Mr. Brummett FMLA forms to fill out on February 17, 2021.  One of those forms was not statutorily permitted.  And at the earliest, the forms were due on March 4th (15 days after they were provided, per FMLA statutory requirements).  DataBank fired Mr. Brummett on March 3rd - day 14 - immediately after, and apparently because, he informed the company that he had retained an employment lawyer, and that the company's insistence on a Return to Work certificate was unlawful under the FMLA.  Databank's explanation for the termination - that Mr. Brummett failed

to return the required documentation within 15 days - was false, unworthy of credence, and not a "legitimate non-discriminatory reason," because that reason in and of itself violated the law.

3.  <u>Discrimination, Retaliation, & Failure to Provide a Reasonable Accommodation in violation of the Americans with Disabilities Act, as amended, and the Texas Labor Code:</u>  After Plaintiff has exhausted his administrative remedies with respect to these claims, he intends to amend this lawsuit and include these claims.

## JURISDICTION AND VENUE

4.  Jurisdiction is conferred on this Court by 28 U.S.C. §1331.

5.  Venue is proper in this Court under 28 U.S.C. §1441(a).  Venue is also proper in this district pursuant to 28 U.S.C. §1391(b)(1) and under 28 U.S.C. §1391(b)(2) because all or substantial part of the events or omission giving rise to the claim occurred in this district.

## PARTIES

6.  Plaintiff Jay Brummett is a resident of Gunter, Texas.  He is a former employee of the Defendant.

7.  Defendant DataBank was Plaintiff's employer.  It can be served with process via its registered agent, COGENCY GLOBAL INC. 1601 ELM ST., SUITE 4360 DALLAS, TX 75201.

## FACTS

8.  Mr. Brummett was previously employed by DataBank from May 20, 2019 to March 3, 2021 as Senior Director of Facilities.

9.  Mr. Brummett is a disabled, military veteran with Post Traumatic Stress Disorder ("PTSD").  Anxiety and increased feelings of stress are two symptoms associated with Mr. Brummett's disability.

10. Mr. Brummett openly discussed his military service and service-related disabilities

with most, if not all, DataBank employees, including DataBank corporate leadership.

11. Mr. Brummett's work performance received frequent praise, and he never received any type of employee discipline.

12. Mr. Brummett was given two performance-based raises.

13. On April 20, 2020, Mr. Brummett was issued an option grant for 2,500 Class B units because he was identified as an exceptional employee.

14. Mr. Brummett also received performance bonuses at the maximum rate.

15. On or about September 29, 2020, DataBank acquired Zayo's Colocation segment, (referred to as "zColo").

16. Shortly after the acquisition, on January 11, 2021, Mr. Brummett learned that his supervisor, Craig Harris, Senior Vice President of Colocation (who was the only other disabled veteran at DataBank) had been terminated. Mr. Harris was replaced with zColo employee, Nat Tafuri.

17. This unexpected leadership change was a triggering event for Mr. Brummett's PTSD.

18. DataBank had previously promised Mr. Brummett that DataBank employees would not be replaced by incoming zColo employees.  Mr. Brummett explained to DataBank leadership that the unexpected transition had caught him off guard, and as a result, he was experiencing stress and anxiety stemming from his PTSD.

19. Mr. Brummett further explained that due the stress and anxiety stemming from his PTSD, he needed time to process the change.

20. On January 13, 2021, Mr. Brummett met with Mr. Raul K. Martynek, CEO, about this

incident.   He explained that he had been blindsided by the decision, and was experiencing considerable stress and anxiety.  He also expressed concern that he, like his supervisor, would be replaced by someone from zColo.

21. The same day, Mr. Brummett spoke with Mr. Ooley, President/CFO.  Mr. Brummett reiterated that the decision had caught him off guard, and told Mr. Ooley that because he suffers from PTSD the uncertainty had produced immense stress and anxiety, which was making it difficult for him to focus.  Mr. Ooley told Mr. Brummett that "they" understood he was very stressed, but told him "not to jump to conclusions."

22. Mr. Tafuri was made aware of Mr. Brummett's disabled status during his initial in-person meeting with Mr. Brummett.  Shortly after Mr. Tafuri commenced employment with DataBank, he and Mr. Brummett went to lunch, and Mr. Brummett disclosed the fact that he is a disabled military veteran who suffers from PTSD.

23. Mr. Tafuri began targeting and nit-picking Mr. Brummett soon after starting working at DataBank.  For example: Mr. Tafuri berated Mr. Brummett for missing two staff meeting calls. Mr. Brummett missed these meetings for legitimate reasons that did not warrant reprimand.  Mr. Brummett missed the first meeting because he had a pre-scheduled doctor's appointment.  Mr. Brummett missed the second meeting because, ironically, he was participating in a company investigation into alleged misconduct by Mr. Tafuri.

24. On February 3, 2021, Mr. Brummett complained to Mr. Steven Phillips, Vice President of Human Resources, that he had been unfairly berated by Mr. Tafuri.  He specifically mentioned that he thought he was being discriminated against.  No action was taken to address Mr. Brummett's complaints.

25. Approximately one week later, on February 11, 2021, Mr. Brummett met with Mr.

Tafuri, and explained he was having a difficult time concentrating due to his stress and anxiety related to his PTSD.

26. At the time when Mr. Brummett met with Mr. Tafuri, Mr. Tafuri had enough information to put him on notice that Mr. Brummett was suffering from a disability and might need an accommodation.

27. Instead of seeking clarification, or exploring whether a reasonable accommodation was called for, Mr. Tafuri told Mr. Brummett that he should just "get over" his stress and anxiety immediately.

28. Four days after informing Mr. Tafuri that he was experiencing symptoms related to his PTSD disability, Mr. Tafuri contacted Mr. Brummett and told him that his performance was not meeting expectations.  This was the first time during his employment that Mr. Brummett had ever been given any indication that his performance was less than satisfactory.

29. The next day, on February 16, 2021, Mr. Brummett contacted Mr. Phillips (HR) again, and made another discrimination complaint.  In his email to Mr. Phillips, Mr. Brummett stated:

> *"The only thing Nat failed to mention is our discussion around the stress and anxiety I have about these changes he is driving and how I'm having difficulty focusing and staying organized because of the anxiety and stress. He responded multiple times that I would just need to get over it because "he" has an agenda that he is going to see through with or without me being part of it. As a protected disabled veteran with PTSD, threats like "just get over your disability or you won't be around any longer" is not the right way to go about things. Please accept this email as formal notification of harassment and violations of my rights as a protected disabled veteran…*

30. Mr. Brummett also asked to use 3 days of his Paid Time Off ("PTO") to address his escalating stress and anxiety symptoms stemming from his PTSD.  He wrote: "I am requesting time away from work to deal with the stress and anxiety that he has created."

31. Mr. Phillips responded: "we will place you on a medical leave for the next three days (which can be extended as necessary)."  Mr. Phillips further stated, "[i]n order to confirm your eligibility for the medical leave and/or any potential ADA accommodation," he would need "documents for your healthcare provider."  Mr. Phillips stated that he would review that information, and then notify Mr. Brummett of eligibility.

32. This email did not state any particular deadline by which Mr. Brummett would need to return the documents.

33. The next day, on February 17, 2021, Mr. Phillips emailed Mr. Brummett two forms:

(a)  a "Family or Medical Leave Request Form;" and (b) a  "Fitness for Duty Form."

34. Mr. Phillips asked Mr. Brummett to have his doctor complete the forms, which would necessarily require a doctor's appointment.

35. Again, Mr. Phillips did not inform Mr. Brummett of any particular deadline to complete the forms, or state that Mr. Brummett would be fired if he did not return the forms by a particular date.  This was in spite of the FMLA's requirement that: "At the time the employer requests certification, the employer must also advise an employee of the anticipated consequences of an employee's failure to provide adequate certification."  29 CFR § 825.305(d).

36. DataBank was also required to give Mr. Brummett an Eligibility Notice, within 5 days of being informed that Mr. Brummett required leave. 29 C.F.R. §825.300(b).  DataBank did not comply with this requirement.

37. The following Monday, February 22, 2021, Mr. Brummett spoke with Mr. Phillips and let him know he had come into contact with two individuals that had tested positive for COVID, and that he was experiencing some symptoms. However, because Mr. Brummett works from home, he notified Mr. Phillips purely as a precautionary measure in accordance with DataBank's policy

and procedures.  Mr. Brummett informed Mr. Phillips he was othwerwise willing and available to

return to work at that time.

38. Mr. Phillips, however, told Mr. Brummett that he <u>was not allowed to return</u> to work

until he had completed his Fitness for Duty Form.

39. From Monday, February 22, 2021 to Thursday, February 25, 2021, Mr. Brummett did

not receive any further information from Human Resources.

40. On Wednesday, February 24, 2021, several of Mr. Brummett's employees began

reaching out to him and expressing concern that he had been terminated because a new

organizational chart had been presented. The new organizational chart did not identify Mr.

Brummett as a DataBank employee:



41. Obviously concerned, Mr. Brummett reached out to Mr. Phillips on Thursday,

February 25, 2021 and asked whether he had been terminated.  Mr. Phillips did not answer Mr.

Brummett's question.  Instead, Mr. Phillips just repeated the instruction that Mr. Brummett should

have his doctor complete the forms.

42. Again, Mr. Phillips did not give Mr. Brummett any specific deadline to complete the

forms, or state that Mr. Brummett's employment would be terminated if he did not return the forms by a particular date.

43. On Friday, February 26, 2021, Mr. Brummett sent Mr. Phillips a text message reiterating his complaints of discrimination and retaliation, emphasizing that he had not requested any type of continuous leave (other than the 3 days from February 17, 2021 to February 19, 2021), and confirming that he was willing and able to return to work.

44. Mr. Brummett also stated that he had not yet been able to get a doctor's appointment for the purposes of completing the forms.

45. The next day, on Saturday, February 27, 2021, Mr. Phillips emailed Mr. Brummett, and for the very first time, gave him a deadline to submit the completed forms. The deadline was for Wednesday, March 3, 2021 - just three days later.[1] He also stated that Mr. Brummett was considered to be on unpaid leave through March 3, 2021.

46. On March 3, 2021, Mr. Brummett submitted the completed Family or Medical Leave Request Form - this was 14 days after Mr. Phillips provided him with the forms on February 17th.

47. The purpose of the "Family or Medical Leave Request Form" was for the Company to determine whether Mr. Brummett's absences would, or would not, be covered by the FMLA. It did not solicit information from a medical provider. The instructions at the top of the page were addressed to the employee: "INSTRUCTIONS FOR THE EMPLOYEE - Complete the form and submit to HR." There was no section for a medical provider to complete.

48. On March 3, 2021, Mr. Brummett also informed Mr. Phillips that he had reached out

---

[1] March 3rd was only 14 days after he had provided Mr. Brummett with the forms (on Feb. 17th). The FMLA requires that employees be given *at least* 15 days in which to return a certification form. 29 CFR § 825.305 ("The employee must provide the requested certification to the employer within 15 calendar days after the employer's request, unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts").

to an employment attorney and required additional information regarding the categorization of his

leave.  In his email to Mr. Phillips, Mr. Brummett stated:

> *"...I did not request FMLA leave for the three days that I missed work due to stress and anxiety stemming from my PTSD.  However, it's my understanding that I am required to complete this form and therefore, in compliance with that requirement, I am submitting the completed form.  I would ask that the company instead treat my 3 days of requested time off as a reasonable accommodation under the ADA rather than as FMLA leave. As mentioned previously, I am willing and able to return to work, and I have been able and willing to return to work since February 22nd. Please let me know if I may return to work now. It is my understanding based on my consultation with an employment attorney that I am not required to complete the Fitness-for-Duty certification to return to work since the Company never provided me with a formal FMLA eligibility and designation notice setting that as a return-to-work requirement. If the company is requiring the Fitness-for-Duty certification, I would like to know whether it is being required under the FMLA or ADA and, if under the ADA, why it is being required, as there is nothing about requesting 3 days of PTO to manage stress and anxiety that should have led the company to believe I would have had any medical or other problems returning to work back on 2/22/21. If there is a legitimate reason the company is requesting the Fitness for Duty Certification, then I will need a list of my essential job duties to take with me to the VA on March 29th. March 29th was the earliest appointment I could get with the VA, and I will need to request a reasonable extension until then to present the form and essential job duties sheet to the VA for their review.*

49. Mr. Phillips responded to Mr. Brummett's email approximately two hours later.

Rather than evaluating the information that Mr. Brummett provided in his FMLA Request form,

Mr. Phillips abruptly terminated Mr. Brummett's employment.  In his correspondence, Mr. Phillips

stated:

> *"You were given 15 days to submit the required paperwork, and reminded of this obligation during your time off.  Today was the deadline for you to submit that documentation, and you failed to do so.  Notably, you did not indicate any reason why you have failed to do so, or provide any information as to when you think you may be able to do so.  As such, and consistent with the multiple prior communications from the Company on this issue, your employment with the Company is being terminated, effective today."*

50. Mr. Phillips' statement -- that Mr. Brummett had failed to provide the FMLA request

form within 15 days -- was false.  Mr. Brummett had provided it to Mr. Phillips that very day - 14 days after Mr. Phillips provided the forms.

51. To the extent that Mr. Phillips was referring to Mr. Brummett's failure to return the "Fitness for Duty" form, Mr. Phillips was not legally permitted to require that form, as set forth below (Paragraph 54).

52. Further, Mr. Phillips' statement that Mr. Brummett did not provide a reason for his failure to provide the medical certification, or a date when he could submit it, are simply false. Mr. Brummett's email to Mr. Phillips clearly stated that he was not able to complete any medical paperwork because he had not been able to obtain an appointment with his doctor yet.  Mr. Brummett also provided Mr. Phillip with the date of his upcoming doctor's appointment.

53. DataBank's refusal to allow Mr. Brummett to return to work unless/until he submitted a "Fitness for Duty Certification" violated the FMLA.  Specifically:

- In order to require such a certification, DataBank must have provided Mr. Brummett "with a list of the essential functions of the employee's job no later than with the designation notice required by §825.300(d), and must indicate in the designation notice that the certification must address the employee's ability to perform those essential functions." DataBank did not provide Mr. Brummett with a designation notice, or a list of essential job functions. See 29 CFR § 825.312(b).

- The designation notice required by 29 CFR § 825.300(d) must have advised Mr. Brummett if DataBank was going to require a fitness-for-duty certification to return to work.  DataBank never issued a Designation Notice, so it did not comply with this requirement. See 29 CFR § 825.312(d).

- DataBank could only "delay restoration to employment" pending receipt of a "fitness-for-duty certification" if it provided the notice required in 29 CFR § 825.300(d).  It did not provide that notice, so it was not permitted to delay Mr. Brummett's return to work.  See 29 CFR § 825.312(e).  *See also* 29 CFR § 825.312(d) ("the employee must provide medical certification, at the time the employee seeks reinstatement at the end of FMLA leave...**if** the employer has provided the required notice").

54. Even if Mr. Phillips *had* been permitted to require the "Fitness for Duty" form (he wasn't), the FMLA requires an employee to provide medical certification "within 15 calendar days after the employer's request, <u>unless it is not practicable under the particular circumstances</u> to do so despite the employee's diligent, good faith efforts."  29 CFR § 825.305.  Mr. Phillips was put on notice that it was not practicable for Mr. Brummett to return the form within 15 days.  Nonetheless, he fired Mr. Brummett before those 15 days were even expired.

55. Even if DataBank did not consider Mr. Brummett's absences to be covered by the FMLA, it could and should have classified the absence as a reasonable accommodation for Brummett's disability.  But DataBank unjustifiably refused to treat the absence as such.

56. Even if Mr. Brummett had failed to return his FMLA Request form within 15 days (he didn't), DataBank's remedy was only to "deny FMLA protections for the leave….until a sufficient certification is provided."  29 CFR § 825.313.  Immediately firing him for his alleged failure to return a certification was not a permissible response under the FMLA.

## <u>COUNT ONE:</u>
## <u>FMLA Interference</u>

57. Plaintiff realleges and incorporates by reference all of the facts set forth in the above sections of this Complaint.

58. DataBank  is an "employer" as defined by the FMLA.  29 U.S.C. § 2611(4).

59. During all relevant times, Plaintiff was an "eligible employee" under the FMLA, 29 U.S.C. § 2611(2)(A), 29 C.F.R. § 825.110.

60. Plaintiff's mental health condition was a serious health condition under the FMLA.

61. Plaintiff informed Defendant that he needed to take leave, and that the leave was potentially for an FMLA-qualifying reason.  29 C.F.R. § 825.301(b).

62.     Defendant failed to provide Plaintiff with an Eligibility Notice (as required by 29 USC 825.300(b)), a Designation Notice (as required by 29 USC 825.300(d)), or a Rights and Responsibilities Notice (as required by 29 USC 825.300(c)).

63.     Defendant unlawfully refused to allow Mr. Brummett to return to work, instead insisting that his doctor complete and submit a "Return to Work" form first.  But DataBank was not legally permitted to make that requirement, since it never provided a Designation Notice (as required by 29 USC 825.300(d)), or a Rights and Responsibilities Notice (as required by 29 USC 825.300(c).

64.     Defendant failed to return Plaintiff to the same position he held when leave commenced, or to an equivalent position with equivalent benefits, working conditions, privileges or status. 29 CFR §825.215(a).  It fired him instead.

65.     Defendant unlawfully fired Plaintiff for his alleged failure to return FMLA paperwork within 15 days - but he provided one form on day 14, and asked for clarification about the other form, since he had learned DataBank could not legally require it.  Rather than providing the clarification, or waiting until day 15 (or later, given the fact that Plaintiff informed them he couldn't get in to see a doctor until March 29th), DataBank promptly fired him.

66.     Plaintiff requests that he be awarded all damages to which he is entitled, as outlined in 29 U.S.C. § 2617, including but not limited to: all lost wages and employee benefits, liquidated damages, pre-judgment interest, and post-judgment interest.

67.     Plaintiff requests reinstatement (or adequate front pay in lieu of reinstatement), injunctive relief to prevent further FMLA violations, and any additional equitable or other relief to which he may be entitled.

68.     Plaintiff also seeks recovery of his reasonable attorney's fees and court costs.

## COUNT TWO:
### FMLA Retaliation

69.  Plaintiff realleges and incorporates by reference all of the facts set forth in the above sections of this Complaint.

70.  DataBank fired Mr. Brummett because he opposed and complained about an unlawful practice under the FMLA - specifically, he complained that DataBank's insistence on receiving a "Return to Work" form before letting him resume work was unlawful.

71.  Plaintiff requests that he be awarded all damages to which he is entitled, as outlined in 29 U.S.C. § 2617, including but not limited to: all lost wages and employee benefits, liquidated damages, pre-judgment interest, and post-judgment interest.

72.  Plaintiff requests reinstatement (or adequate front pay in lieu of reinstatement), injunctive relief to prevent further FMLA violations, and any additional equitable or other relief to which he may be entitled.

73.  Plaintiff also seeks recovery of his reasonable attorney's fees and court costs.

### JURY DEMAND

Plaintiff requests trial by jury.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment against Defendant for the following

A.     an Order finding Defendant liable for Plaintiff's actual damages, including lost wages and benefits (both back pay and front pay), the sum to be determined at time of trial as a result of Defendant's FMLA violations;

B.     an Order finding Defendant liable for liquidated damages in an amount equal to Plaintiff's lost wages, plus interest as a result of Defendant's FMLA violations;

C.      an order that Defendant take such other and further actions as may be necessary to redress Defendant's violations of the FMLA, including, if applicable, reinstatement to Plaintiff's former position (or front pay if reinstatement not feasible);

D.      an Order awarding Plaintiff the costs of this action;

E.      an Order awarding Plaintiff his attorney's fees;

F.      an Order awarding Plaintiff pre-judgment and post-judgment interest at the highest rates allowed by law; and

G.      an Order granting such other and further relief as may be necessary and appropriate.

*Respectfully Submitted,*

Tremain Artaza, PLLC

By: */s/ Ashley Tremain*
    **Ashley E. Tremain**
    State Bar No. 24066209
    **Carmen Artaza**
    State Bar No. 24055114

    13140 Coit Road, Ste. 104
    Dallas, Texas 75240
    Telephone: (469)-573-0229
    Facsimile: (214)-254-4941
    ashley@tremainartaza.com
    carmen@tremainartaza.com
    **COUNSEL FOR PLAINTIFF**