IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISCTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHN "JAY" BRUMMETT, | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 3:21-cv-00960-S |
| v. | § § | |
| DATABANK HOLDINGS, LTD., | § § | |
| | § | JURY DEMAND |
| Defendant. | § | |

**DEFENDANT'S ORIGINAL ANSWER**

Defendant DataBank Holdings, Ltd. ("Defendant" or "DataBank"), by and through its counsel of record, respectfully submits its Original Answer to Plaintiff John "Jay" Brummett's ("Plaintiff" or "Brummett") Original Complaint as follows:

**BACKGROUND FACTS SUPPORTING RESPONSES AND AFFIRMATIVE DEFENSES**

Founded in 2005, DataBank has grown into a leading provider of enterprise-class colocation, connectivity, and managed services. Part of its strategic growth is a result of various acquisitions of valuable assets. For example, in December 2020, DataBank announced it had closed its acquisition of zColo data center assets from Zayo Group Holdings. This transaction enabled DataBank to offer its secure colocation, connectivity, cloud, and managed services in over 60 data centers spread across 29 key markets in the United States and Europe.

Plaintiff Jay Brummett began working for DataBank prior to the zColo acquisition, in May of 2019, under the supervision of Craig Harris. When Brummett informed DataBank he was being recruited by another employer, Brummett received a pay increase and opportunity to own a limited amount of equity in the Company, which was awarded to him in April of 2020. Shortly after this time, however, Brummett's performance began to suffer. In one example, a DataBank customer

located at a Dallas data center experienced a delay related to the installation of services. In discussing the situation with his boss, Brummett attributed the delay to "piss poor facility management." Of course, Brummett was the Director of Facilities, and it was his team that was in fact largely responsible for the customer situation.

Around the time of the zColo acquisition, Brummett began spreading false information that he and Mr. Harris would be in charge of their working group after the acquisition. In fact, no decisions as to specifics of staffing post-integration were made until after the acquisition was closed. Brummett also began seeking out detailed information regarding Mr. Harris's counterpart at zColo.

During this same general period of time, in the Fall of 2020, DataBank experienced an unprecedented number of data center events that impacted DataBank's customers. As those events were investigated, the Company determined that the root cause of various failures could be traced to the poor management and oversight of the facilities management team led by Brummett. In fact, Brummett's poor management and understanding of basic functions relative to certain risks were well known by others on the DataBank colocation engineering team. He was warned that the way he was operating in certain areas was risky to DataBank and its customers, but Brummett arrogantly ignored the warnings.

Brummett's peers were also concerned with his performance, emailing him messages such as, "I feel like we are falling short of expectations lately." It was ultimately revealed that Brummett had been reporting incorrect information to the DataBank team and that despite being told the reported numbers were wrong, Brummett was either unwilling or unable to correct them.

Unfortunately, these were not the only lies Brummett was telling DataBank. His dishonestly continued, for example, when Brummett took steps to mislead DataBank into believing

he was working when he was not actively performing the services required. It also appears Brummett created and/or spread false information regarding one or more co-workers in an effort to have them fired. Further, Brummett claimed to have missed one or more meetings with his supervisor because he was with DataBank's attorneys at the time, when he actually was not.

Brummett was failing in his job areas in other ways as well. Among other things, he was not conducting performance reviews, would not attend customer meetings, used profanity in unprofessional ways and could not effectively lead a review of changes in expenses in his department, nor did he seem to understand the variances of basic financial reporting. Brummett decided to travel to Minneapolis, ostensibly for duties related to the construction of MSP3, a new data center in the area. However, Brummett had no involvement in this project at that time. Brummett's trip (at DataBank's expense) was so haphazard that he did not even confirm whether his direct report would be present on the day of his visit. When Brummett learned he would not, he still went on the trip, causing him to miss an important staff meeting, claiming, "My phone died and wouldn't come back on this morning, bad timing with meetings out here in MSP, plus my flight cancelled and I've got to rebook." A check of air traffic in and out of Minneapolis revealed no canceled flights.

After the zColo acquisition closed, it was determined Mr. Harris, the person involved in obtaining a pay increase and equity offer for Brummett, and the person who Brummett believed would be "running things" (with Brummett by his side), would be laid off, and Nat Tafuri (who had been working at zColo) would instead become Brummett's new supervisor.

Shortly after the transaction closed, Mr. Tafuri spelled out specific performance deficiencies he was noticing with Brummett. For example, on February 4, 2021, Mr. Tafuri emailed Brummett with specific matters that needed to be promptly addressed. In response,

Brummett took "vacation" (without approval from Mr. Tafuri). Mr. Tafuri met with Brummett in person on or about February 11 to continue their performance-related discussion, during which time Brummett informed Mr. Tafuri that he was "not okay" with the fact that Mr. Harris had been discharged and Mr. Tafuri had been allowed to stay with DataBank. Mr. Tafuri encouraged Brummett to do what he could do to "get over" the fact that his former supervisor no longer worked for DataBank so that he could be a contributing member to the new team.

At or around this same time, in February 2021 (when DataBank was already hearing rumors that Brummett was looking for work elsewhere), DataBank investigated an anonymous and disparaging email communication to certain of its customers in which Brummett's new supervisor – Mr. Tafuri – was falsely accused of various improprieties. Based on a number of factors, including Brummett's erratic and unpredictable behavior and the fact the email targeted his new supervisor, DataBank strongly suspects that Brummett, whether alone or with others, was involved in the attack on DataBank. To date, DataBank suffered significant damages as a result and is currently investigating Brummett's suspected involvement.

Before DataBank could address Brummett's ongoing performance deficiencies, on or about February 16, 2021 (after returning from his recent "vacation"), Brummett announced that he needed to immediately take time off to deal with work-related stress caused by the change in his supervisor. Brummett also tied his "stress" and need for immediate time off to his status as a veteran with post-traumatic stress disorder ("PTSD").

Never before during Brummett's employment with DataBank had he requested any form of accommodation based on PTSD. However, given the serious nature of Plaintiff's statements to DataBank, the Company notified Brummett he could take off the three workdays he was requesting (and longer, if necessary). Although Brummett originally requested the immediate time off simply

4

be considered additional vacation or PTO, his request came at a time when DataBank was in the thick of responding to multiple matters related to the recovery from the 2021 Texas winter storm. As such, it needed "all hands on deck" and was not approving vacation or PTO requests without appropriate advance notice. However, given the specifics of Brummett's request, DataBank informed Brummett he could take off the requested days, but would need to provide appropriate documentation to support the leave was what he told DataBank it actually was – necessary and related to his PTSD.

To this day, and despite multiple requests, Brummett has never produced any documents supporting his request for time off from work to deal with "stress" or any form of PTSD. As such, and although the circumstances related to his performance were such that they would have independently supported his termination, his employment was terminated for violating the DataBank attendance policy. To DataBank's knowledge, Brummett promptly obtained new employment shortly after his discharge.

### **SPECIFIC RESPONSES TO PLAINTIFF'S ALLEGATIONS**[1]

1. Answering Paragraph 1, Defendant admits that in February 2021, during the time frame when Mr. Brummett was reminded that his performance was not meeting expectations, Brummett informed DataBank that he required time off from work *immediately* due to alleged work-related stress. Brummett indicated the immediate leave was necessary because it was somehow related to PTSD. Despite the alleged medical need for the immediate leave, Mr. Brummett asked to take the time off as "vacation" or paid time off. However, at that time, the Company was in the middle of responding to emergent matters related to the 2021 Texas winter storm, which response required the efforts of all employees – particularly those of Brummett, who

---

[1] Paragraph numbers used in this Answer correspond to the paragraph numbers in Plaintiff's Original Complaint.

managed the Critical Facilities team at DataBank. As such, the Company indicated that while it could not authorize an immediate "vacation" given the circumstances, it would allow him to take the time off if he needed to do so for medical reasons. Consistent with its policies on any three-or-more-day absences for illness, DataBank informed Brummett that he would be required to provide appropriate documentation supporting the need for his absence so that it could be considered excused. Any remaining factual allegations in Paragraph 1 are denied.

2. Answering Paragraph 2, Defendant admits that promptly after Plaintiff announced he required immediate time off of work related to PTSD, Defendant took steps to ensure that he was afforded any and all protections under applicable law and/or Company policy to which he might be entitled. Notably, although Brummett had discussed his time in the military and may have casually mentioned to co-workers that he had PTSD, he had never formally notified DataBank that he considered himself disabled or that he required any form of accommodation in order to perform the essential functions of his position. As such, DataBank sought basic and permitted information regarding Brummett's condition and stated need for immediate leave in order to help the Company determine whether and/or to what extent Plaintiff might be eligible for protected leave under the Family and Medical Leave Act ("FMLA"), Americans with Disabilities Act ("ADA"), other applicable law and/or Company policy. The Company requested that the information be provided within 15 days. To date, despite multiple requests, Plaintiff has never provided any documentation that would confirm he in fact required any time off from work due to PTSD or any other reason. As such, his three-day absence was considered unexcused and consistent with DataBank policy, his employment was terminated. Any remaining factual allegations in Paragraph 2 are denied.

3. Paragraph 3 is comprised of legal argument and/or conclusion to which no response

is required. In fact, as a matter of law, it should be stricken. Defendant denies any and all factual allegations contained therein. Plaintiff chose to file this lawsuit knowing that he had not yet exhausted (and to Defendant's knowledge has not even initiated the process of exhausting) the administrative remedies required to pursue a claim under the ADA and/or the Texas Labor Code. There is no reason that Plaintiff was forced to file this lawsuit before he had exhausted the administrative remedies required so that he could pursue all of his claims simultaneously.

## JURISDICTION AND VENUE

4. Paragraph 4 is comprised of legal argument and/or conclusion to which no response is required. Defendant admits that as a matter of law, federal courts have jurisdiction over claims brought pursuant to the FMLA.

5. Paragraph 5 is comprised of legal argument and/or conclusion to which no response is required.

## PARTIES

6. Defendant admits that Plaintiff is a former employee of DataBank. Defendant lacks knowledge and/or information sufficient to admit or deny the remaining factual allegations in Paragraph 6, and thus, in an abundance of caution denies same.

7. Defendant admits that it is Plaintiff's former employer. Defendant admits that it agreed to be served with the Complaint via its counsel of record herein.

## FACTS

8. Defendant admits that Brummett was employed with DataBank from February 22, 2021 through March 3, 2021. Defendant further admits that Plaintiff's job title at DataBank was Senior Director of Facilities. Any remaining facts contained in Paragraph 8 are denied.

9. Defendant lacks knowledge and/or information sufficient to admit or deny the

allegations in Paragraph 9, and thus in an abundance of caution denies same.

10. Denied.

11. Denied.

12. Defendant admits that Plaintiff received one pay raise. Any remaining factual allegations in Paragraph 12 are denied.

13. Answering Paragraph 13, Defendant admits that Plaintiff received an option grant during his employment at the request of Mr. Harris. Defendant further admits that shortly after receiving this option grant, Brummett's performance began to deteriorate. In fact, on or about October 19, 2020, Brummett met with DataBank management, who discussed with him a multitude of facility failures under his and Mr. Harris' responsibility. The discussion included a review of a third-party report regarding an electrical outage that stated, "In the debrief with your team today, playing Monday morning quarterback, we all agreed that working on a customer's primary and reserve system concurrently is a heightened risk that should not be taken in the future." All remaining factual allegations are denied.

14. Defendant lacks sufficient information or belief as to what Plaintiff means by "bonuses at the maximum rate" and thus denies the allegations in Paragraph 14. Defendant admits that Brummett received a partial year bonus for 2019 and that Brummett received the lowest percentage attainment of employees participating in the MIP program for 2020.

15. Defendant admits that it acquired zColo in or about 2020, and that the transaction closed in December 2020. Otherwise, denied.

16. Defendant admits on information and belief that Craig Harris, Brummett's former supervisor at DataBank, served in the U.S. military. DataBank lacks information and/or belief sufficient to know whether Mr. Harris suffered from any disability. Defendant admits that Mr.

8

Harris was let go in connection with the integration of DataBank and zColo. Defendant lacks information and/or belief sufficient to enable it to admit or deny whether Plaintiff learned of this fact on January 11, 2021. Any remaining factual allegations are denied.

17. Defendant denies that changes in leadership after an acquisition are "unexpected." Defendant also lacks information and/or knowledge sufficient to admit or deny the remaining allegations in Paragraph 17, and they are thus denied.

18. Defendant denies that it made any "promises" to Plaintiff regarding the at-will employment of any employee. Defendant further admits that Brummett's performance deficits, which began before the zColo integration, continued through 2021. Defendant admits that after the termination of Mr. Harris, at or around the time Brummett was being counseled regarding his work performance by his new supervisor, Brummett communicated that he was suffering from work-related stress in part because he believed that he and Mr. Harris would be promoted as part of the zColo integration, but that did not occur. In fact, the Company had learned that Brummett had been falsely telling others that as a result of the zColo transaction, he would essentially be "running the entire operation." Any remaining factual allegations are denied.

19. Denied.

20. DataBank admits that in or around January 2021, Brummett communicated to Company Management that he was "a little freaked out" that he might not have a position at the Company much longer and was "pissed off" about the decision to promote Mr. Tafuri. Otherwise, denied.

21. Answering Paragraph 21, DataBank admits that in January 2021, Mr. Ooley communicated with Brummett in order to clarify Brummett's misconceptions, which email speaks for itself. Otherwise, denied.

9

22. On information and belief, denied.

23. Defendant admits that Brummett was counseled by Mr. Tafuri regarding performance-related issues. Defendant further admits that Brummett missed various work meetings and was counseled relating to these absences. Defendant further admits that Brummett falsely stated that his absence for at least one of these meetings was because he was meeting with DataBank's lawyers. Defendant lacks information and belief sufficient to enable it to admit or deny allegations regarding Plaintiff's alleged doctor's visit. As such, this allegation, and any other remaining allegations, are denied.

24. Although Brummett communicated various complaints regarding his new supervisor, Defendant denies that Brummett made any complaint of unlawful discrimination or harassment on or about February 3, 2021. Otherwise, denied.

25. Defendant admits that in part due to Brummett's continuing performance problems, Mr. Tafuri reached out to Brummett in an effort to communicate. Any remaining factual allegations are denied.

26. Paragraph 26 contains legal argument and/or conclusion that requires no response. Any factual allegations contained therein are denied.

27. Denied.

28. Denied.

29. Defendant admits that Plaintiff sent an email to Mr. Phillips on or about February 16, 2021, some of which is quoted in Paragraph 29. Defendant denies that Brummett's email accurately reflects his supervisor's communications with him. Defendant further denies that this was "another" discrimination complaint.

30. Defendant admits that Brummett requested immediate time off from work in

February 2021 and tied this request to work-related stress and PTSD. Defendant also admits that Brummett requested that he be permitted to take this time off as paid vacation or other time off. Any remaining factual allegations in Paragraph 30 are denied.

31. Defendant admits that given the Company's legitimate business needs at the time Plaintiff requested immediate time off, it did not approve his request for vacation/PTO, but that in an abundance of caution, it would place him on a medical-related leave pending review of relevant information from Plaintiff's treating healthcare providers. DataBank indicated that the medical leave would tentatively be approved for the three days Plaintiff requested, but that it could be extended to the extent warranted. Defendant admits that Brummett appears to have quoted excerpts from Mr. Phillips' email communication on this issue.

32. Defendant admits that given the importance of the issue, Mr. Phillips not only sent Brummett an email confirming the Company's agreement to allow him the requested immediate time off, but Mr. Phillips also spoke with Mr. Brummett on the telephone regarding these issues. Defendant admits that the deadline for providing the Company the information it required relative to his alleged immediate need for time off was not contained in the specific email referenced in Paragraph 31, but instead during Mr. Phillips' related telephone conference with Brummett.

33. Defendant admits that Mr. Phillips emailed forms to Brummett in response to his request for immediate time off of work due to PTSD.

34. Defendant admits that it requested that Brummett provide it with information regarding his request for time off related to PTSD. Defendant lacks information and/or belief sufficient to enable it to admit or deny whether the requested information would have required Plaintiff to have a doctor's appointment, and thus denies that allegation, as well as any other allegations remaining in Paragraph 34.

35. Defendant admits that it reminded Brummett that in order to confirm his absences would be excused, he needed to provide the Company with appropriate documentation, and that the Company was requesting that information within 15 days of the first day of his absence. Defendant further admits that Plaintiff informed Mr. Phillips that he would likely have his doctor at the Veterans Administration provide the paperwork. Defendant further admits that during these conversations, Brummett did not indicate that he anticipated any difficulty in obtaining the information requested by the Company. The remainder of Paragraph 35 contains legal argument and/or conclusion to which no response is required. Any remaining factual allegations contained therein are denied.

36. Paragraph 36 contains legal argument and/or conclusion to which no response is required. Any factual allegations contained therein are denied.

37. DataBank admits that on or about February 22, 2021, Brummett contacted Mr. Phillips and informed him that he had come in contact with individuals who had tested positive for COVID-19, that he too was not feeling well and was experiencing symptoms, and that he intended to get a COVID-19 test. Otherwise, denied.

38. DataBank admits that Mr. Phillips reminded Brummett that the Company required appropriate documentation in order to confirm that his absence related to his PTSD could be considered excused. To the extent that Plaintiff is using the term "fitness for duty" form as a term defined by the FMLA and/or ADA, such allegation is in fact legal argument and/or conclusion that requires no response. Otherwise, denied.

39. DataBank admits that Brummett did not provide the requested information regarding his alleged need for immediate PTSD leave, whether and/or to what extent his leave needed to be extended, or regarding whether he had tested positive for COVID-19 from February

22 to February 29, 2021. Otherwise, denied.

40. DataBank admits that while Brummett was taking the time off he requested for PTSD, a new organizational chart involving others in his group was published. Defendant further admits that organizational charts of the type Brummett references are modified from time to time. Defendant lacks information and/or belief sufficient to enable it to admit or deny whether any DataBank employees expressed "concern" regarding this issue and as such, denies all remaining allegations.

41. Defendant admits that at this time, DataBank had still not obtained any information from Plaintiff's medical care providers regarding whether and/or to what extent Brummett was able to perform the essential functions of his position with or without an accommodation and/or whether and to what extent he required any form of leave. DataBank also admits that it encouraged Brummett to focus his efforts on obtaining information and/or documentation from his doctors so that DataBank could work with him and his treating healthcare providers to determine the appropriate next steps. Otherwise, denied.

42. Denied.

43. DataBank admits that on or about February 26, 2021, Plaintiff requested to return to work without having to submit any documentation confirming whether the immediate leave he needed because of PTSD was in fact due to such condition and/or whether he had been released to return to work by his treating doctor(s). Defendant also admits that Plaintiff communicated with Mr. Phillips via text and or email, which communications speak for themselves. Otherwise, denied.

44. Defendant lacks information and/or belief sufficient for it to admit or deny the allegations in Paragraph 44. As such, they are denied.

45. Defendant admits that on one or more occasions during his absence, Plaintiff was

13

reminded of the deadline to submit documentation to the Company. Defendant also admits that although it allowed Brummett to utilize accrued paid time off to cover the first three days of his absence, it informed him that any remaining time off would be considered an unpaid leave. Footnote 1 in Paragraph 45 contains legal argument and/or conclusion to which no response is required. Any remaining factual allegations are denied.

46. Defendant admits that at no time did Brummett provide any form of doctor's note or other documentation that supported his request for immediate time off of work due to PTSD.

47. Defendant admits that it sent Brummett various forms to complete in connection with his request for immediate time off of work, and that those documents speak for themselves. Otherwise, denied.

48. Defendant admits that Brummett communicated with Mr. Phillips during his time away from work, which communications speak for themselves. Defendant further admits that it attempted to clarify for Brummett the specific information it was requesting in order to consider his time off from work excused, but Brummett never provided such information. To the extent this paragraph otherwise consists of legal argument and/or conclusion, no response is required.

49. Defendant admits that Brummett communicated with Mr. Phillips during his time away from work, which communications speak for themselves. Defendant further admits that it attempted to clarify for Brummett the specific information it was requesting in order to consider his time off from work excused, but Brummett never provided such information. To the extent this paragraph otherwise consists of legal argument and/or conclusion, no response is required.

50. Defendant admits that Brummett communicated with Mr. Phillips during his time away from work, which communications speak for themselves. Defendant further admits that it attempted to clarify for Brummett the specific information it was requesting in order to consider

his time off from work excused, but Brummett never provided such information. To the extent this paragraph otherwise consists of legal argument and/or conclusion, no response is required.

51. Defendant admits that Brummett communicated with Mr. Phillips during his time away from work, which communications speak for themselves. Defendant further admits that it attempted to clarify for Brummett the specific information it was requesting in order to consider his time off from work excused, but Brummett never provided such information. To the extent this paragraph otherwise consists of legal argument and/or conclusion, no response is required.

52. Paragraph 52 is comprised of legal argument and/or conclusion to which no response is required. To the extent there are any factual allegations contained therein, they are denied.

53. Paragraph 53 is comprised of legal argument and/or conclusion to which no response is required. To the extent there are any factual allegations contained therein, they are denied.

54. Paragraph 54 is comprised of legal argument and/or conclusion to which no response is required. To the extent there are any factual allegations contained therein, they are denied.

55. Paragraph 55 is comprised of legal argument and/or conclusion to which no response is required. To the extent there are any factual allegations contained therein, they are denied.

56. Paragraph 56 is comprised of legal argument and/or conclusion to which no response is required. To the extent there are any factual allegations contained therein, they are denied.

## COUNT ONE:
## FMLA Interference

57. Defendant incorporates by reference its objections and responses to "all of the facts set forth above" in sections of Plaintiff's Complaint.

58. Paragraph 58 is comprised of legal argument and/or conclusion to which no response is required. To the extent there are any factual allegations contained therein, they are denied.

59. Paragraph 59 is comprised of legal argument and/or conclusion to which no response is required. To the extent there are any factual allegations contained therein, they are denied.

60. Paragraph 60 consists of legal argument and/or conclusion to which no response is required. Defendant lacks knowledge, information and/or belief sufficient to admit or deny the factual allegations contained therein. As such, they are denied.

61. Paragraph 61 consists of legal argument and/or conclusion to which no response is required. Defendant admits that Plaintiff informed DataBank that he needed to take immediate time off from work in relation to work-related stress and/or PTSD. Otherwise, denied.

62. Paragraph 62 consists of legal argument and/or conclusion to which no response is required. Defendant admits that Plaintiff did not timely provide any documentation from any medical provider supporting a need for immediate time off of work related to PTSD as Plaintiff had alleged was necessary. Otherwise, denied.

63. Paragraph 63 consists of legal argument and/or conclusion to which no response is required. To the extent there are any factual allegations contained therein, they are denied.

64. Paragraph 64 consists of legal argument and/or conclusion to which no response is required. To the extent there are any factual allegations contained therein, they are denied.

65. Paragraph 65 consists of legal argument and/or conclusion to which no response is required. To the extent there are any factual allegations contained therein, they are denied.

66. Defendant denies that Plaintiff is entitled to any remedy or relief as the result of his claims in this action.

67. Defendant denies that Plaintiff is entitled to any remedy or relief as the result of his claims in this action.

68. Defendant denies that Plaintiff is entitled to any remedy or relief as the result of his claims in this action.

## COUNT TWO:
## FMLA Retaliation

69. Defendant incorporates by reference its objections and responses to "all of the facts set forth above" in sections of Plaintiff's Complaint.

70. Denied.

71. Defendant denies that Plaintiff is entitled to any remedy or relief as the result of his claims in this action.

72. Defendant denies that Plaintiff is entitled to any remedy or relief as the result of his claims in this action.

73. Defendant denies that Plaintiff is entitled to any remedy or relief as the result of his claims in this action.

Any factual allegation not specifically admitted herein is denied.

## PLAINTIFF'S PRAYER FOR RELIEF

Defendant denies that Brummett is entitled to any remedy or relief as the result of his claims in this action and specifically denies that he is entitled to the relief sought in his prayer for damages and/or other relief.

## DATABANK'S AFFIRMATIVE DEFENSES AND OTHER MATTERS

1. Some or all of Brummett's Complaint fails to state a claim or claims upon which relief can be granted.

2. Brummett's claims and/or damages are barred, or his recovery should be offset, by the after-acquired evidence doctrine.

3. Brummett's claims are barred, in whole or in part, by his failure to properly and timely exhaust administrative remedies.

4. Brummett must mitigate any and all alleged damages and DataBank is entitled to an offset for any amounts that were in fact earned or that could have been earned by Brummett during the relevant time.

5. Brummett's claims fail, in whole or in part, based upon the same-actor inference to the extent the same individuals made the decisions to hire Brummett and to terminate his employment.

6. Brummett's claims fail, in whole or in part, to the extent that the employment actions complained of by Brummett were based upon legitimate, nondiscriminatory, non-retaliatory reasons and/or good faith reliance on applicable administrative rulings, orders or law.

7. Some or all of Brummett's claims are barred to the extent that DataBank acted promptly and reasonably to correct and/or prevent the conduct, if any, giving rise to Brummett's claims.

8. Some or all of Brummett's claims are barred, in whole or in part, by his failure to use available internal preventative and/or corrective opportunities or procedures to remedy or avoid his claimed harm.

9. Brummett cannot recover punitive damages for any alleged discrimination because any such alleged conduct would be contrary to DataBank's good faith efforts to comply with the applicable anti-discrimination laws.

10. Brummett cannot properly recover actual and/or punitive damages under multiple or different theories and causes of action.

11. Brummett's statement that he intends to someday bring a claim for disability discrimination against Defendant is improper. Any such claim fails based on Plaintiff's failure to timely and properly exhaust his administrative remedies.

12. Some or all of Brummett's claims are barred by the defenses of unclean hands and/or inequitable conduct.

13. Brummett's claims for punitive damages fail to the extent that they are unconstitutional and/or are otherwise unavailable.

14. Brummett's claim for compensatory and punitive damages and other relief are subject to all applicable statutory caps and limitations.

15. DataBank is not liable for the alleged unlawful acts and/or omissions by its supervisors and/or managers to the extent those individuals acted outside the course and scope of their employment.

16. To the extent unlawful discrimination or retaliation, if any, was a motivating factor in any decision regarding Brummett (which DataBank expressly denies), DataBank would have made the same decision absent any improper motivation.

WHEREFORE, Defendant prays that Plaintiff's Complaint be fully and finally dismissed with prejudice, at Plaintiff's cost, and that the Court grant Defendant such other and further relief as is just and equitable.

Respectfully submitted,

By: /s/Marcia N. Jackson
Bryan J. Wick
State Bar No. 24003169
bryan.wick@wickphillips.com
Marcia N. Jackson
State Bar No. 24008411
marcia.jackson@wickphillips.com
Dana M. Hilzendager
Texas Bar No. 24106099
dana.hilzendager@wickphillips.com

**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Telephone: (214) 692-6200
Facsimile: (214) 692-6255

***ATTORNEYS FOR DEFENDANT DATABANK HOLDINGS, LTD.***

## CERTIFICATE OF SERVICE

On July 12, 2021, the foregoing document was electronically submitted with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that all counsel of record has been served electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/Marcia N. Jackson
Marcia N. Jackson